IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHIRLEY HILTON, | |
| Plaintiff, | Case No. 1:14-cv-06928 |
| v. | *Honorable John Z. Lee* |
| RELIANCE STANDARD LIFE INSURANCE COMPANY et al., | *Magistrate Judge Young B. Kim* |
| Defendant. | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT
AND ITS RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Edna S. Kersting
Wilson Elser Moskowitz Edelman & Dicker LLP
55 West Monroe Street, Suite 3800
Chicago, Illinois 60603
(312) 821-6162
Edna.kersting@wilsonelser.com

## I.  INTRODUCTION

In this lawsuit, Plaintiff Shirley Hilton ("Plaintiff") seeks long term disability benefits under an employee welfare benefit plan, afforded by Old Dominion Freight Line, Inc. ("Old Dominion"), to its eligible employees, including Plaintiff. The Old Dominion benefit plan ("Plan") is insured by Group Policy No. VPL 300610 ("Policy") issued by Reliance Standard Life Insurance Company ("Reliance Standard" or "Defendant"), which also serves as the Plan's claims review fiduciary. The Policy is governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA").

The Policy confers discretionary authority to Reliance Standard to determine eligibility for benefits and interpret the provisions of the Policy. As such, this court reviews this matter under an arbitrary and capricious standard of review and Reliance Standard's decision should be upheld unless it is "downright unreasonable." The sole issue before the Court is therefore whether Reliance Standard's final determination to deny long term disability benefits to Plaintiff was reasonable under the terms of the Policy.

Plaintiff left her employment as a Dispatcher with Old Dominion in May 2013 and applied for disability benefits. The LTD Policy defines total disability during the first 36 months as the inability to perform the material duties of the claimant's regular occupation. The Policy defines regular occupation as the Insured's occupation as it is normally performed in the national economy, and not the unique duties performed for a specific employer or in a specific locale. Thereafter, total disability is defined as the inability to perform the material of any occupation.

Based on the medical records from Digestive Health Specialists and Plaintiff's family doctor Dr. Richard T. Escajeda, and two clinical reviews, which all identified normal clinical and diagnostic tests and lab results, Reliance Standard denied Plaintiff's claim for benefits.

1

Plaintiff appealed and based on the result of its ongoing investigation, including its analysis of Plaintiff's own updated medical records and independent gastroenterologist Dr. Steven Tawil's review, which made clear that Plaintiff's medical records were devoid of any abnormal diagnostic results supporting impairment, Reliance Standard upheld its initial denial because Plaintiff's medical records did not evidence any restrictions or limitations preventing her from performing her sedentary occupation. This lawsuit followed. Reliance Standard's decision to deny Plaintiff's benefits should be affirmed because the record before this Court unequivocally demonstrates that Plaintiff did not satisfy her burden of proof under the Policy in establishing that she suffered from an impairment which prevented her from performing the material duties of her sedentary occupation.

While Plaintiff attempts to find flaws with Reliance Standard's determination, the record makes clear that not one of Plaintiff's criticisms has any merit. While Plaintiff claims that Reliance Standard should not have "accepted" independent consultant gastroenterologist Dr. Steven Tawil's opinions because they selectively accept and ignore *restrictions* from Plaintiff's treating physicians, not one of Plaintiff's treating physicians provided any restrictions and/or limitations Plaintiff experiences as a result of her conditions. Moreover, Plaintiff raises the bizarre claim that Mr. Zurick conducted a vocational analysis which fails to consider Plaintiff's non-exertional limitations. Mr. Zurick only conducted a regular occupational analysis, designating Plaintiff's regular occupation. He did not need to consider any limitations because he did not provide a vocational analysis based on restrictions and limitations – which generally are only appropriate in the context of determining whether a claimant has the ability to work in any occupation. In this matter, Reliance Standard denied benefits based on Plaintiff's failure to demonstrate disability from her *regular occupation*.

For all of these reasons, Plaintiff cannot credibly contest that Reliance Standard's determination has rational support in the record and is at least reasonable. Summary Judgment should be entered in

2

Reliance Standard's favor as a matter of law.

## II. UNDISPUTED FACTUAL AND PROCEDURAL BACKGROUND

Along with this memorandum of law, Reliance Standard submits its Statement of Undisputed Material Facts in accordance with Local Rule 56.1. A copy of the complete administrative record ("AR") generated during the review of Plaintiff's claim, bates labeled AR 1 through AR 549 has previously been filed with the court. In the following summary of relevant facts provided for the court's convenience, Reliance Standard's Statement of Facts is referenced by citation to the respective paragraph of the document as ("DSUF at ¶ ____").

### A. Relevant Policy Language

The Policy's **Insuring Clause** provides that a monthly benefit will be paid if an insured:

(1) Is Totally Disabled as the result of a Sickness or Injury covered by this Policy;
(2) Is under the regular care of a Physician unless the Insured has reached the maximum point in his/her recovery where medical services will no longer help him/her;
(3) Has completed the Elimination Period; and
(4) ***Submits satisfactory proof of Total Disability to us***.

(Defendant's Statement of Undisputed Facts ("DSUF") at ¶9 (emphasis supplied))

The Policy defines Totally Disabled as follows:

Totally Disabled and Total Disability mean, that as a result of Injury or Sickness:

(1) During the Elimination Period and for the first 36 months for which a Monthly Benefit is payable, an Insured cannot perform the material duties of his/her Regular Occupation; […]

(DSUF at ¶10)

"Regular Occupation" is defined as the Insured's occupation as it is normally performed in the national economy, and not the unique duties performed for a specific employer or in a specific locale. (DSUF at ¶11)

3

B.  **Initial Review and Denial of Plaintiff's Claim**

When Plaintiff left her regular occupation with Old Dominion on May 17, 2013, Plaintiff was employed as a Dispatcher, Motor Vehicle, at an annual salary of $53,819.52. (DSUF at ¶¶6, 13) Plaintiff applied for long term disability benefits in July 2013. (DSUF at ¶13) Plaintiff's medical records from Digestive Health Specialists identified gastric bypass surgery due to obesity in March 2010 (DSUF at ¶21) and despite subsequent complaints of diarrhea, sigmoidoscopies in March 2010 and January 2011 were essentially normal. (DSUF at ¶¶21, 23) Despite Plaintiff's diarrhea complaints, her weight was noted to be stable and her diet to be regular. (DSUF at ¶24) Plaintiff's blood work was essentially normal and a March 2011 ultrasound of Plaintiff's upper abdomen was normal as well. (DSUF at ¶¶ 25, 26) Plaintiff demonstrated normal iron saturation and tests were negative for infectious diarrhea. (Id.)

Repeat sigmoidsocopy and biopsy performed in August 2012 were normal and showed no evidence of inflammatory bowel disease or microscopic or collagenous colitis. (DSUF at ¶31) April 2013 testing revealed no abnormalities and again no evidence of inflammatory bowel disease or microscopic or collagenous colitis. (DSUF at ¶32)

In May 2013 Plaintiff applied for social security disability income benefits and her claim was denied on July 30, 2013 as she was found to have the functional capacity to meet the functional demands of her job as a dispatcher. (DSUF at ¶ 40) On September 9, 2013, based on Plaintiff's medical records and two clinical reviews which were unable to substantiate impairment, Reliance Standard denied Plaintiff's claim for benefits. (DSUF at ¶¶39, 41, 42)

C.  **Plaintiff's Appeal and Reliance Standard's Final Determination**

Plaintiff appealed the denial of her claim on October 31, 2013. (DSUF at ¶ 43) Reliance Standard requested additional records from Dr. Poleynard, whom Plaintiff had not seen after May

4

2013, as well as from Duke University Medical Center in Durham, NC. (DSUF at ¶¶44, 45) Duke University forwarded records from Plaintiff's November 14, 2013 office visit and testing. (DSUF at ¶¶45-48) Plaintiff's November 2013 office visit note demonstrated that Plaintiff engaged in dietary indiscretion and a high fat diet, evidenced by her diet prior to her appointment, showing a "gravy biscuit for breakfast, ham sandwich for lunch, fried chicken tenders and French fries for dinner." (DSUF at ¶46) As such, Dr. Wilson's recommendations and plan included a change of medication as well as avoidance of fatty foods, caffeine containing drinks and resumption of her post bypass solid diet. (DSUF at ¶47) Plaintiff's blood work in November 2013 was normal and showed no evidence of malnutrition, normal vitamin b12 and no anemia. (DSUF at ¶48)

In February 2014, Reliance Standard forwarded Plaintiff's file to MES for review by an independent gastroenterologist. (DSUF at ¶50) Internist and gastroenterologist Dr. Steven Tawil explained that there was no documented electrolyte disturbances, azotemia, weight loss, dehydration, need for intravenous fluid therapy, emergency room visits or hospitalization despite Plaintiff's complaints of multiple loose stools per day. (DSUF at ¶53) Plaintiff's endoscopic studies were normal, with normal biopsies and despite complaints of incontinence, Plaintiff had not had a need for diapers or perinala dermatitis. (Id.) She further demonstrated weight gain. (Id.) As such, he opined that Plaintiff had no identifiable restrictions or limitations from May 17, 2013 and forward. (DSUF at ¶¶54-56) On April 3, 2014, Reliance Standard upheld its previous denial of Plaintiff's claim and on September 8, 2014, Plaintiff filed the present lawsuit. (DSUF at ¶¶ 59, 61)

### III. LEGAL ARGUMENT

**A.** <u>Standard of Review</u>

**1.** <u>ERISA Standard of Review</u>

Typically, federal courts review the denial of ERISA benefits under a *de novo* standard of review "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine

5

eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S. Ct. 948 (1989). In this case, the Policy provides as follows:

> Reliance Standard Life Insurance Company shall serve as the claims review fiduciary with respect to the insurance policy and the Plan. The claims review fiduciary has the discovery authority to interpret the Plan and the insurance policy and to determine eligibility for benefits. Decisions by the claims review fiduciary shall be complete, final and binding on all parties.

(DSUF at ¶12)

There can be no question that this language is sufficient to meet the "requisite of minimum clarity" and, thus, fulfills the "safe harbor" requirement as set out in *Herzberger v. Standard Ins. Co.*, 205 F.3d 327, 331-332 (7th Cir. 2000).

Accordingly, as Plaintiff concedes (Plf. Brief at pp. 3-4), the deferential arbitrary and capricious standard of review applies and Reliance Standard's decision to terminate Plaintiff's claim for benefits is entitled to "great deference." *See Ruiz v. Cont. Cas. Co.,* 400 F.3d 986, 991 *(*7th Cir. 2005). As such, this Court has to affirm Reliance Standard's determination when it does not "def[y] all common sense," *Dabertin v. HCR Manor Care, Inc.,* 373 F.3d 822, 828 (7th Cir. 2004), or was "so implausible based on the evidence that it could not be ascribed to a difference in view." *Allison v. Dugan*, 951 F.2d 828, 833 (7th Cir. 1992).

### 2. There Is No Evidence That Reliance Standard's Conflict Of Interest Influenced Its Determination

The deference granted to a fiduciary under ERISA is tempered somewhat to account for any conflict of interest. *See Metropolitan Life Ins. Co. v. Glenn,* 554 U.S. 105, 128 S.Ct. 2343 (2008). Plaintiff's brief provides a paragraph on structural and "procedural conflicts" – however, cites to absolutely no case law supporting his theory that the Seventh Circuit considers anything but a structural conflict as a possible factor in a case subject to an arbitrary and capricious standard of review. *Compare, e.g., Gutta v. Std. Select Trust Ins. Plans,* No. 06-3708, 285 Fed. Appx. 302, 2008 U.S. App.

6

LEXIS 16952 (7th Cir. Aug. 8, 2008). The Seventh Circuit has further made clear that the *Glenn* decision does not demand a "heightened [arbitrary and capricious] standard of review." *Gutta,* 2008 U.S. App. LEXIS 16952.

On a motion for rehearing and rehearing *en banc* brought by the plaintiff in *Gutta*, the Seventh Circuit explained:

> […] ***Glenn* also made it clear that the conflict of interest it identified is just one of many factors that might help demonstrate an abuse of discretion. "Any one factor," it concluded "will act as a tiebreaker when the other factors are closely balanced, the degree of closeness necessary depending upon the tiebreaking factor's inherent or case-specific importance."** 128 S.Ct. at 2352. Here, even acknowledging Standard's dual role and thus conflict of interest, we do not find the other factors to be closely balanced. [..]

*Id.* (emphasis supplied.)

Just like in *Gutta*, the other factors in this case are not closely balanced, requiring a "tie-breaker." This is not a close case given the utter lack of any restrictions or limitations experienced by Plaintiff as a result of her self-reports. Therefore, no tie breaker is needed.

Moreover, Plaintiff cannot point to any evidence that Reliance Standard's presumed conflict of interest impacted the denial of benefits in any way. To the contrary, the claim file reveals that Reliance Standard undertook active steps to promote the neutral, unbiased and accurate adjudication of her claim (AR 98) and provided Plaintiff with a thorough and unbiased review, which included a request for an independent consultation.

B. <u>Reliance Standard's Denial of Plaintiff's Claim is at least Reasonable.</u>

1. **Burden of Proof**

The Policy places the burden of proof on Plaintiff to submit Proof of Loss to Reliance Standard that she satisfied the conditions precedent to benefit eligibility. (AR 14, 18) Consequently, Plaintiff must prove that she is unable to perform the material duties of her regular occupation as a result of her medical condition and that Reliance Standard's determination was arbitrary and capricious. *See, e.g.,*

7

*Ruttenberg v. U.S. Life. Ins. Co.*, 413 F.3d 652, 663 (7th Cir. 2005) ("Mr. Ruttenberg seeks to enforce benefits under the policy; he therefore bears the burden of proving his entitlement to contract benefits."); *accord Tolle v. Carroll Touch, Inc.*, 23 F.3d 174, 179 (7th Cir. 1994) ("To recover benefits under §1132(a)(1)(B), the employee must establish that she has satisfied the conditions necessary for benefits under the plan."). Plaintiff cannot and did not meet her burden in this matter.

### 2. Plaintiff's Medical Records Do not Support Total Disability.

Plaintiff ignores that it is settled case law that the mere diagnosis of a medical condition is *per se* insufficient to establish eligibility for benefits. *See Estok v. Apel,* 152 F.3d 636, 640 (7th Cir. 1998) ("It is not enough to show that [the claimant] had received a diagnosis of fibromyalgia [. . .], since fibromyalgia is not always (indeed, not usually) disabling."); *Tennant v. Apfel,* 224 F.3d 869 (8th Cir. 2000*); Buxton v. Halter*, 246 F.3d 762, 764 (6th Cir. 2001) (diagnosis of medical condition not sufficient to establish impairment from regular occupation).

Even after demonstrating a valid diagnosis, it is still the burden of the claimant to **objectively** establish that the symptoms of her diagnosed condition prevented her from performing the material and substantial duties of her regular occupation -- a burden Plaintiff cannot meet here. *See Williams v. Aetna Life Ins. Co.*, 509 F.3d 317 (7th Cir. 2007); *Donato v. Metropolitan Life Ins. Co.,* 19 F.3d 375, 382 n. 6 (7th Cir. 1994) (finding that a claim for benefits based on psychiatric disability "requires objective psychiatric evidence linking [the] symptoms to a psychiatric disorder that is totally disabling"); *Olson v. Comfort Sys. USA Short Term Disability Plan,* 407 F. Supp. 2d 995 (W.D. Wis. 2005); *Pralutsky v. Met. Life Ins. Co.*, 435 F.3d 833, 840-41 (8th Cir. Jan. 19, 2006), *Johnson v. Metro. Life Ins. Co.,* 437 F.3d 809 (8th Cir. 2006); *Jordan v. Northrop Grumman Corp. Welfare Benefit Plan*, 370 F.3d 869, 882 (9th Cir. 2004); *Boardman v. Prudential Ins. Co. of Am.,* 337 F.3d 9, at 16-17 (1st Cir. 2003) ("In this case, Prudential did not require Boardman to present objective medical evidence to

establish her illnesses. On the contrary, Prudential was willing to accept that Boardman suffered from the illnesses she reported to her doctors. Rather, Prudential wanted objective evidence that these illnesses rendered her unable to work. While the diagnoses of chronic fatigue syndrome and fibromyalgia may not lend themselves to objective clinical findings, the physical limitations imposed by the symptoms of such illnesses do lend themselves to objective analysis."); *Gardner-Renfro v. Apfel*, 2000 U.S. App. LEXIS 32178 (10th Cir. Dec. 18, 2000) ("Regardless of whether plaintiff could have been diagnosed with a particular medical condition, none of the consultative physicians found her to have functional impairments which precluded the performance of all work during the relevant period.").

Here, Plaintiff already has difficulties establishing a diagnosis other than chronic diarrhea, given that her diagnostic tests do not support a diagnosis of inflammatory bowel disease or microscopic or collagenous colitis. (DSUF at ¶¶17, 31, 32, 47). Moreover, she never manifested any extra-intestinal signs of irritable bowel disease (DSUF at ¶¶20, 21) and Dr. Poleynard did not associate Plaintiff's diarrhea with irritable bowel disease. (DSUF at ¶¶22, 23).

Even if one assumed, however, that she suffered from irritable bowel disease, colitis and chronic diarrhea, Plaintiff's medical records still fail to objectively demonstrate that the symptoms of her conditions render her unable to perform her regular occupation. While she has been complaining of frequent stools and periodic fecal incontinence since 2005 -- eight years before she left her employment -- Plaintiff's diagnostic and laboratory test results showed no abnormalities. (DSUF at ¶¶21, 23, 26, 28, 30, 31, 32, 33, 47, 50) Specifically, she had a normal small bowel series in October 2008 (DSUF at ¶18) and a normal sigmoidoscopy in March 2010 (DSUF at ¶21), negative E coli and toxin testing in January 2011 (DSUF at ¶21) and a repeat normal sigmoidoscopy, also in January 2011. (Id.) In March 2011, she had a normal ultrasound of her upper abdomen, demonstrated no anemia and all studies for

9

infectious diarrhea were negative. (DSUF at ¶¶25, 26) In April 2011 and again July 2012, there were essentially no abnormalities in her blood work. (DSUF at ¶¶28, 30) She had normal mucosa throughout her colon as demonstrated by sigmoidoscopy and biopsy in August 2012 and her stool culture was negative. (DSUF at ¶31) In April 2013, she underwent an esophagogastroduodenoscopy (EGD) with biopsy which revealed no abnormalities. (DSUF at ¶32) An abdominal CT performed in April 2013 was essentially normal as well. (DSUF at ¶33) November 2013 urinalysis and blood work, including complete blood count and complete metabolic panel, were normal (DSUF at ¶47) as well as an MRI of her abdomen and her pelvis. (Id.) Her physical examinations were likewise normal. (DSUF at ¶58)

Additionally, neither one of Plaintiff's gastroenterologists found her disabled and while her family doctor noted her to be unable to return to work, his assessment was unsupported by any restrictions or limitations, explanation or other objective reasoning. (DSUF at ¶38). Courts have outright rejected conclusory and contradictory remarks of treating physicians pertaining to a claimant's disability and, indeed, insurers are cautioned to not rely on such statements. *See Jordan*, 370 F.3d at 869 (holding that accepting a treating physician's conclusory remark without any explanation can be characterized as arbitrary); *Pralutsky,* 435 F.3d at 833 (unsupported opinions insufficient to prove disability.) Thus, Dr. Escajeda's statement that Plaintiff could not work while failing to explain the basis for this conclusion or to provide evidence supporting his opinion, including any restrictions or limitations, is insufficient to support Plaintiff's claim. *See Wages v. Sandler O'Neill & Partners, L.P*., 37 Fed. Appx. 108 (6th Cir. 2002) (Court found letters from physicians insufficient indicating that the plaintiff's condition precluded even the lightest work, yet neither doctor quantified the plaintiff's functional limitations in terms of the number of hours the plaintiff could sit or stand comfortably).

While Plaintiff points to Dr. Escajeda's Attending Physician's Statement submitted with her claim in an attempt to create restrictions and limitations Reliance Standard could have relied on to approve her claim (Plf. Brief at p. 8), Plaintiff overlooks that Dr. Escajeda's opinions on the Attending Physician's Statement are inconsistent. (DSUF at ¶15) While he indicated that Plaintiff could not sit, stand, walk or drive at all during an 8 hour work day with two breaks and lunch – not even for 1 to 3 hours – he then noted that she was able to continuously (or 67 to 100%) of the time bend, squat, climb, reach above shoulder, kneel, crawl, use feet and drive, lift up to 50 lbs and frequently carry 25 lbs in an 8 hour day. (Id.) Moreover, he noted that she had not yet reached maximum medical improvement. (Id., AR 136)

Finally, despite complaints of diarrhea up to 20 times a day, including nocturnal stooling and some fecal incontinence, Plaintiff showed no evidence of weight loss – indeed she was able to gain weight during 2013 (DSUF at ¶ 54) – dehydration or electrolyte disturbance and anemia, all of which one would expect with chronic diarrhea as described by Plaintiff.[1] She also demonstrated neither rectum pain or perianal dermatitis. Amazingly, despite her complaints, Plaintiff also failed to adjust her diet to her reported problems and instead, as late as November 2013, consumed a diet very high in fat, had increased caffeine intake[2] and poor compliance with her post bariatric surgery diet recommendations. (DSUF at ¶48)

The evidence in the claim file indicates clearly that Plaintiff cannot meet her burden of proof. Reliance Standard's determination to deny Plaintiff's claim is at least reasonable.

### 3. Reliance Standard Could Reasonably Rely On Dr. Tawil's Opinion.

When evaluating conflicting medical evidence, a claims administrator in the ERISA context

---

[1] http://www.niddk.nih.gov/health-information/health-topics/digestive-diseases/diarrhea/Pages/facts.aspx#symptoms (last visited June 8, 2015); http://www.drugs.com/health-guide/diarrhea.html (last visited June 8, 2015).
[2] http://www.webmd.com/ibs/guide/ibs-triggers-prevention-strategies (last visited June 8, 2015); http://www.webmd.com/ibs/guide/irritable-bowel-syndrome-ibs-treatment-overview (last visited June 8, 2015).

need not give deference to a plaintiff's treating physicians when determining eligibility for benefits. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 832 (2003) (holding that a treating physician's opinions are not entitled to special deference by ERISA plan fiduciaries in determining whether their patients are disabled). It is settled law in the Seventh Circuit that a treating physician's opinion receives no special weight and can be rejected on the basis of reliable evidence with no discrete burden of explanation; thus, prohibiting courts from overturning discretionary decisions by administrators because they failed to defer to treating physicians' opinions. *Mote v. Aetna Life Ins. Co.*, 502 F.3d 601, 607 (7th Cir. 2007) ("We also have recognized that '[m]ost of the time, physicians accept at face value what patients tell them about their symptoms; but insurers. .. must consider the possibility that applicants are exaggerating in an effort to win benefits (or are sincere hypochondriacs not at serious medical risk).' […] Accordingly, the did not act improperly when it looked to, and credited, evidence that conflicted with Mote's treating physicians' opinions as part of its deliberative process in evaluating her claim."); *Davis v. Unum Life Ins. Co. of Am.*, 444 F.3d 569, 578 (7th Cir. 2006) *cert. denied* 2006 U.S. LEXIS 7191 (U.S., Oct. 2, 2006) ("[R]eaching a decision amid such conflicting medical evidence is a question of judgment that should be left to [the insurer] under the arbitrary-and-capricious standard. *See* [*Nord,* at 1972]; *Ruiz*, 400 F.3d at 992).

      Clearly, based on settled case law, Reliance Standard could appropriately rely on Dr. Tawil's opinion. Dr. Tawil provided responses to specific questions posed by Reliance Standard and explained his opinions by reference to Plaintiff's normal objective test results, her weight gain and lack of dehydration, electrolyte imbalance and anemia as well as her lack of emergency treatment of hospitalization despite what she describes as severe diarrhea. (DSUF at ¶¶55, 57) Moreover, while he explained that her treatment options had not been exhausted[3], this, contrary to Plaintiff's blind claim,

---

[3] http://www.mayoclinic.org/diseases-conditions/irritable-bowel-syndrome/basics/treatment/con-20024578 (

was hardly the sole basis for his opinion that Plaintiff had retained full work ability and did not suffer from any restrictions or limitations – as neither one of her treating physicians identified any. (DSUF at ¶¶56, 58)

Finally, lending additional support to Reliance Standard's reliance on Dr. Tawil's opinion, the Seventh Circuit ahs held that opinions of specialists are to be given more weight than the opinions of family doctors and general practitioners, such as Dr. Escajeda. *See Stephens v. Heckler,* 766 F.2d 284 (7th Cir. 1985).

### 4. Mr. Zurick's Occupational Analysis Was Only That – an Occupational Analysis.

Plaintiff's final argument misses the mark as well. Mr. Zurick's occupational analysis determined Plaintiff's regular occupation only. (DSUF at ¶40). Reliance Standard likewise did not find "residual functional capacity of full time sedentary work" but rather found that Plaintiff was not disabled form her previous occupation as her medical records did not demonstrate any restrictions or limitations preventing her from working.

Plaintiff's case law cited in alleged support of her argument that a "vocational expert" had to conduct a vocational assessment in connection with every disability determination is inapposite. *Quinn v. Blue Cross & Blue Shield,* 161 F.3d 472 (7th Cir. 1998) stands for the premise that a claims examiner may not make vocational determinations when evaluating whether a claimant had the ability to perform ***any occupation*** without gathering relevant facts. *Id.* Reliance Standard did not render a decision on the issue whether Plaintiff possessed transferable skills to perform other occupations, but rather denied her claim on the basis that she could return to her own regular occupation as she was not totally disabled throughout the elimination period. (AR 304-306; 531-537). The same applies to *Heinrich v. Prime Computer Long Term Disability Plan*, No. 94-cv-6914, 1996 U.S. Dist. LEXIS 12564 (N.D. Ill. Aug. 28, 1996), which is also a case involving an "any occupation" determination

13

without review of a claimant's employment qualifications by a qualified individual. *Id.* at 14-16. Plaintiff's citation to the District of New Jersey decision in *Augustino v. Ashland Oil*, No. 87-2824, 1988 U.S. Dist. LEXIS 6360 (D. N.J. June 24, 1988) is misplaced as well as again, that case deals with a disability definition requiring inability to perform "any occupation for which he is reasonably qualified by education, training or experience." *Id.* at 4. Contrary to Plaintiff's claim that *Augustino* stands for the premise that a "vocational expert[s] should be required in every case", *Augustino* holds that a medical processional can relate a claimant's impairment to the physical requirements of particular jobs. *Id.* at 9. Plaintiff's citation to *Gunderson v. W.R. Grace & Co. LTD Income Plan*, 874 F.2d 496 (8th Cir. 1989) does not fair any better, as again, *Gunderson* involved a termination of benefits under the "any occupation" definition of disability – inapposite to the facts in this case.

### 5. The Proper Remedy Is The One That Returns Plaintiff To The *Status Quo*

Even if this Court were to enter judgment in favor of Plaintiff, the Seventh Circuit has made clear that in determining the remedy in an ERISA case, a court should distinguish between "a case dealing with a plan administrator's initial denial of benefits and a case where the plan administrator terminated benefits to which the administrator previously had determined the claimant was entitled." *Hackett v. Xerox Corp. Long-Term Disability Income Plan*, 315 F.3d 771, 775-76 (7th Cir. 2003). The proper remedy is the one that returns the plaintiff to the *status quo* at the time the defendant made its decision. *Hackett*, 315 F.3d at 776. Accordingly, should Plaintiff be entitled to judgment, the case should be remanded to Reliance Standard.

### IV. CONCLUSION

For all these reasons, there can be no question that Reliance Standard properly determined that Plaintiff is not entitled to any benefits under the Policy. Accordingly, Reliance Standard requests that this Court enter an order upholding its decision to deny Plaintiff's benefits and granting it such further

relief as is just and adequate.

Dated: June 8, 2015            Respectfully submitted,

                                          **RELIANCE STANDARD LIFE INSURANCE COMPANY, Defendant**

                                          By: */s/ Edna S. Kersting*
                                                  One of Its Attorneys

Edna S. Kersting
WILSON, ELSER, MOSKOWITZ, EDELMAN
& DICKER, LLP
55 West Monroe Street
Chicago, Illinois 60603-5001
Telephone: (312) 704-5550
Facsimile: (312) 704-1522
edna.kersting@wilsonelser.com

## CERTIFICATE OF SERVICE

      I hereby certify that on June 8, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system and/or by U.S. Regular Mail.

      Parties may access this filing through the Court's system.

                                                     */s/ Edna S. Kersting*
                                                       Edna S. Kersting